Michael Thomas Stram

Plaintiff, Pro Se

1155 W. Grove Pkwy., Apt. 345

Tempe, Arizona 85283

Telephone: (773) 240-8767

Email: michael_stram@icloud.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Thomas Stram, | Case No. 2:26-cv-00231-SMB |
|     Plaintiff, | |
| v. | **SECOND AMENDED COMPLAINT** |
| TransUnion LLC, | (15 U.S.C. §§ 1681e(b), 1681i, 1681n) |
| Equifax Information Services LLC, | **JURY TRIAL DEMANDED** |
| Experian Information Solutions, Inc., | |
|     Defendants. | Hon. Susan M. Brnovich |
| | United States District Judge |

## I. INTRODUCTION

1. Plaintiff Michael Thomas Stram, appearing pro se, brings this Second Amended Complaint against Defendants TransUnion LLC ("TransUnion"), Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian")

(collectively, "Defendants") for willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").

2. Defendants' violations form a documented, multi-year pattern. TransUnion deleted nine of Plaintiff's disputed accounts as unverifiable on September 8, 2022 (File No. 432861748). Equifax and Experian continued reporting those same accounts for more than thirty months thereafter. Experian's January 27, 2026 reinvestigation of the Ally Financial account made the tradeline more derogatory than it was before the dispute. Equifax reported the OneMain Financial account as an actively delinquent charged-off balance on a debt discharged in Plaintiff's Chapter 7 bankruptcy for more than twenty-four months post-discharge. Equifax and TransUnion failed to apply bankruptcy discharge notations to accounts included in Plaintiff's October 9, 2024 discharge. Experian correctly applied discharge notations to affected accounts.

3. Plaintiff seeks actual damages, statutory damages, punitive damages, injunctive relief, costs, and such further relief as the Court deems just and proper.

## II. JURISDICTION AND VENUE

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, Defendants transact business in this District, and Plaintiff's consumer reports have been published to users located within this District.

6. Plaintiff has Article III standing. Plaintiff suffered concrete, particularized injuries including denial of housing, dissemination of inaccurate credit information to third parties, excess cost of credit, adverse insurance underwriting decisions, and expenditure of time and money attempting to correct Defendants' errors. See TransUnion LLC v. Ramirez, 594 U.S. 413, 432–34 (2021); Spokeo, Inc. v. Robins, 578 U.S. 330, 342 (2016).

## III. PARTIES

7. Plaintiff Michael Thomas Stram is a natural person and a "consumer" within the meaning of 15 U.S.C. § 1681a(c). Plaintiff resides at 1155 W. Grove Pkwy., Apt. 345, Tempe, Arizona 85283.

8. Defendant TransUnion LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois, and is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) and (p).

9. Defendant Equifax Information Services, LLC is a Georgia limited liability company with its principal place of business in Atlanta, Georgia, and is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) and (p).

10. Defendant Experian Information Solutions, Inc. is an Ohio corporation with its principal place of business in Costa Mesa, California, and is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) and (p).

## IV. FACTUAL BACKGROUND

**A. Plaintiff's Chapter 7 Bankruptcy and October 9, 2024 Discharge**

11. On June 6, 2024, Plaintiff filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Arizona, Case No. 4:24-bk-04546-BMW, before the Honorable Brenda Moody Whinery. Plaintiff's bankruptcy schedules listed all accounts and creditors relevant to this action.

12. On October 9, 2024, the Bankruptcy Court entered the Order of Discharge (Doc. 28) in Case No. 4:24-bk-04546-BMW, discharging Plaintiff's Chapter 7 debts under 11 U.S.C. § 727. The Bankruptcy Noticing Center served notice of the discharge on affected creditors by court-certified electronic notice.

13. Following the discharge, each discharged debt no longer legally existed as a collectible obligation. Under Metro 2 reporting standards, consumer reporting agencies are required to apply Special Comment Code "DA" (Discharged in Bankruptcy Chapter 7) to affected accounts and to reflect a zero balance consistent with the legal extinguishment of the debt.

**B. Dispute History and the September 8, 2022 TransUnion Deletion**

14. Between June 2022 and the present, Plaintiff submitted multiple written disputes to each Defendant concerning accounts in his consumer credit files, including but not limited to the Ally Financial auto loan ending in 2523 ("Ally Financial"), the OneMain Financial personal loan ending in 3953 ("OneMain"), the Fortiva Mastercard account ending in 1033, the OpenSky Capital Bank account ending in 0687, and the First Premier Bank account ending in 0833. Plaintiff's disputes were submitted by certified mail, by online dispute portal, and through multiple written complaints filed with the

Consumer Financial Protection Bureau and the Texas Attorney General's Consumer Protection Division. Plaintiff also delivered formal arbitration demands totaling $14,000 by certified mail to each Defendant; none received a substantive response.

15. On September 8, 2022, TransUnion issued Plaintiff a dispute results letter under File No. 432861748 confirming that, following reinvestigation, TransUnion had deleted nine (9) disputed accounts from Plaintiff's TransUnion credit file because TransUnion could not verify the accuracy of the reported information.

16. Upon information and belief, TransUnion's deletion resulted from the same or substantially similar dispute information and documentation that Plaintiff submitted, or would submit, to Equifax and Experian regarding the same accounts.

**C. Equifax and Experian Continued Reporting After TransUnion's Deletion**

17. Despite the September 8, 2022 TransUnion deletion, Equifax and Experian continued to report the same accounts for more than thirty (30) months thereafter. Ally Financial was deleted by TransUnion on September 8, 2022. Equifax continued to report Ally Financial as a derogatory tradeline through at least February 19, 2026, when it appeared on Plaintiff's Equifax consumer disclosure. The Ally Financial tradeline was absent from Plaintiff's Equifax consumer disclosure dated March 19, 2026 — a silent deletion that occurred while this action was pending and Equifax had appeared through counsel. Experian continued to report Ally Financial through at least January 2026, and Experian's January 27, 2026 reinvestigation made the tradeline more derogatory, as described in Section D below.

18. Equifax and Experian continued reporting the same accounts after TransUnion deleted them as unverifiable, on substantially the same furnisher evidence.

**D. Experian's January 27, 2026 Reinvestigation Worsened the Ally Financial Tradeline**

19. In January 2026, Plaintiff submitted a written dispute to Experian concerning the Ally Financial account ending in 2523, identifying specific inaccuracies and providing supporting documentation.

20. Experian completed its reinvestigation on January 27, 2026. See Experian Dispute Results, Report No. 0262-2015-40 (Jan. 27, 2026). Before the reinvestigation, the Ally Financial tradeline on Plaintiff's Experian file displayed a status of "Paid, Closed/Never late" with no derogatory payment indicators for any month in the April 2019 through February 2020 period. After the January 27, 2026 reinvestigation, the same tradeline displayed: 30-day late payment indicators for April, May, June, July, August, and September 2019; a 30-day late indicator for January 2020; a 60-day late indicator for February 2020; and a status of "Paid, Closed" — removing the "Never late" notation entirely. Experian's reinvestigation added eight months of derogatory payment history that had not previously appeared on Plaintiff's Experian file and eliminated a favorable notation.

21. Experian's reinvestigation made the Ally tradeline more derogatory than it was before the dispute, which Plaintiff alleges was unreasonable under 15 U.S.C. § 1681i. Upon information and belief, Experian's reinvestigation consisted of transmitting a coded ACDV to Ally Financial through the e-OSCAR system and accepting the furnisher's automated response as dispositive, without independent review of the documents Plaintiff submitted and without consideration of TransUnion's prior determination that the account was unverifiable.

**E. Equifax's Post-Discharge Reporting of the OneMain Financial Account**

22. OneMain Financial was listed as a creditor in Plaintiff's Chapter 7 schedules. The Bankruptcy Noticing Center served notice of the October 9, 2024 discharge on OneMain Financial by court-certified electronic notice. OneMain Financial's own internal account records confirm actual knowledge of the bankruptcy filing and discharge.

23. On March 3, 2026, Plaintiff submitted a dispute to Equifax concerning the OneMain Financial tradeline (Dispute Confirmation No. 6067543091). On March 4, 2026, Plaintiff filed CFPB Complaint No. 260305-29587787 identifying four specific inaccuracies. Equifax completed its reinvestigation on March 18, 2026 and did not correct any of the identified inaccuracies.

24. Equifax's reporting of the OneMain Financial account ending in 3953 contained at least the following inaccuracies as of the date of this filing: (a) Frozen discharged balance. Equifax reported the balance as $20,587 continuously from on or about March 31, 2024 through the date of this filing — more than twenty-four months — despite the October 9, 2024 Chapter 7 discharge. Equifax's February 19, 2026 consumer disclosure reflects the OneMain account ending in 3953 as open with an active balance of $20,587. That account was discharged on October 9, 2024 and should not have been reported as open. (b) Cross-source balance contradiction. Equifax reported the balance as $20,587. OneMain Financial's own consumer portal reflected a materially different balance and reported the account status as "This Account is in Bankruptcy." (c) Conflicting delinquency designations. Equifax's formal consumer disclosure dated January 28, 2026 reported September 2023 as 30 days past due. Equifax's online myEquifax portal, on multiple dates, reported September 2023 as 60 days past due on the same account. Both cannot be accurate for the same month. (d) No bankruptcy notation. Equifax's payment history grid contained no "B" (Included in Bankruptcy) indicator in any month, despite the discharge and the furnisher's own acknowledgment of bankruptcy.

Escalating delinquency reporting through charge-off with no bankruptcy notation is facially incompatible with the legal status of the debt. (e) Inaccurate scheduled payment. Equifax reported the scheduled payment as $501. OneMain's internal records reflected a formal loan modification reducing the payment to $250.76. (f) Inaccurate Date of First Delinquency. Equifax reported the DOFD as March 1, 2024. Equifax's own payment history grid reflected a late mark in September 2023, which is internally inconsistent with a DOFD of March 1, 2024.

25. On March 26, 2026, Equifax submitted a written response to CFPB Complaint No. 260305-29587787 representing that the OneMain tradeline had been "updated" and that the SCHEDULED PAYMENT, BALANCE, STATUS, and other fields had been "modified." Those represented modifications are not reflected in Equifax's reporting on the OneMain tradeline at any time through the date of this filing. The balance remained at $20,587. The scheduled payment remained at $501. The status continued to reflect active charge-off reporting with no bankruptcy notation.

**F. Failure to Apply Bankruptcy Discharge Notations — All Three Defendants**

26. The October 9, 2024 discharge applied to multiple accounts included in Plaintiff's Chapter 7 schedules. Each Defendant had an independent duty under 15 U.S.C. § 1681e(b) to follow reasonable procedures ensuring that their reporting accurately reflected the discharge. Equifax and TransUnion failed to do so. Experian correctly applied discharge notations to affected accounts, and that correct conduct is used here as evidence that the discharge information was available to all Defendants and that Equifax's and TransUnion's failures were not the result of unavailable data.

27. TransUnion's consumer disclosure dated October 12, 2025 — one full year after the discharge — reflected: no account bearing Metro 2 Special Comment Code "DA"

or any equivalent discharge notation; no account bearing remark code "BKL" or "CBL"; and no bankruptcy notation in the public records section. Accounts that were open at the time of filing — including accounts with Apple Card/GS Bank USA, Capital One, and OneMain Financial — were silently deleted from the TransUnion file without any discharge notation.

28. The silent deletion of those accounts without discharge notations creates a materially misleading picture: a creditor reviewing Plaintiff's TransUnion file as of October 2025 would have no indication that any account was discharged in bankruptcy, while accounts that should reflect a discharge instead simply disappeared without explanation. This presentation is false in both directions — it conceals both the debts and the discharge — and violates 15 U.S.C. § 1681e(b). See Saunders v. Branch Banking & Trust Co., 526 F.3d 142 (4th Cir. 2008); Gorman v. Wolpoff & Abramson, 584 F.3d 1147 (9th Cir. 2009).

29. Equifax's reporting reflected no bankruptcy discharge notation on the OneMain Financial tradeline through the date of this filing, and escalating post-discharge derogatory reporting on the First Premier Bank account without any corresponding bankruptcy notation, as reflected in Equifax's consumer disclosures produced in this action.

30. Experian correctly applied bankruptcy discharge notations to certain accounts, including the Apple Card/GS Bank USA, Capital One, and Affirm tradelines, as reflected in consumer disclosures on or about January 27, 2026. That Experian correctly identified and reported the discharge on those accounts while Equifax and TransUnion failed to do so on the same accounts demonstrates that the information necessary to accurately report the discharge was available to all Defendants, and that Equifax's and TransUnion's failures reflect inadequate procedures under 15 U.S.C. § 1681e(b).

31. Equifax's and TransUnion's failure to accurately report the discharge across affected accounts constitutes a separate violation of 15 U.S.C. § 1681e(b) and, where the account was the subject of a post-discharge dispute, a separate violation of 15 U.S.C. § 1681i.

**G. Equifax Post-Discharge Reporting of the First Premier Bank Account**

32. First Premier Bank account ending in 0833 was included in Plaintiff's Chapter 7 schedules and discharged on October 9, 2024. Following the discharge, Equifax's consumer disclosures reflected escalating derogatory payment history on the First Premier Bank account without any bankruptcy notation, including no "Included in Bankruptcy" designation in the payment history grid. Equifax's post-discharge reporting of the First Premier account is inconsistent with the legal status of the debt following the October 9, 2024 discharge.

33. Experian applied a discharge notation to the First Premier Bank account. That Experian correctly coded the same account that Equifax continued reporting with escalating derogatory history and no discharge notation demonstrates that the discharge information was available and that Equifax's failure to apply it reflects inadequate procedures under 15 U.S.C. § 1681e(b).

34. TransUnion's October 12, 2025 consumer disclosure reflected the First Premier Bank account as "Unrated" with a closure date of June 2024 and no bankruptcy discharge notation.

**H. Rubber-Stamp Reinvestigation Pattern**

35. Documents produced by Experian in this action reflect repeated "Auto Response" entries on ACDVs related to Plaintiff's disputes. Those records establish that Experian's reinvestigations consisted of automated furnisher responses accepted without independent review of the documents Plaintiff submitted, and that Experian failed to forward those documents to furnishers as required by 15 U.S.C. § 1681i(a)(4). As to Equifax and TransUnion, upon information and belief, their reinvestigation procedures as applied to Plaintiff's disputes similarly did not involve independent review of the documents Plaintiff submitted or independent assessment of furnisher responses. The basis for that belief is that Equifax and TransUnion continued to report the same inaccuracies Plaintiff identified across multiple dispute cycles, including inaccuracies that were simultaneously deleted by TransUnion as unverifiable and continued by Equifax on substantially the same furnisher evidence.

**I. Ally Financial Mathematical Impossibility and Furnisher Record Contradiction**

36. Both Equifax and Experian reported the following payment history sequence for the Ally Financial account ending in 2523 for January through March 2019: January 2019 — 60 days past due; February 2019 — 90 days past due; March 2019 — 30 days past due. This sequence is mathematically impossible under standard credit reporting logic. A consumer cannot be reported as 30 days past due in a month immediately following a month reported as 90 days past due without an intervening payment bringing the account current.

37. Ally Financial's own account records contradict the payment history reported by Equifax and Experian for those same months. The divergence between Ally's own records and the bureaus' reported payment histories constitutes a separate inaccuracy under 15 U.S.C. § 1681e(b).

**J. Additional Facial and Internal Contradictions**

38. One or more Defendants reported the Chase Sapphire credit card account as simultaneously "pays account as agreed" and "60 days past due" within the same tradeline. An account cannot simultaneously be current and 60 days delinquent. This internal contradiction within a single Defendant's own reporting constitutes a facial inaccuracy under 15 U.S.C. § 1681e(b).

39. With respect to the Credit Union of Colorado auto loan account, Experian reported 30-day late payment marks for multiple months in 2025, including February, April, June, and July, while Equifax reported those same months as paid on time on the same account. Both outputs cannot be simultaneously accurate for the same months on the same account.

**K. Facial Payment History Inaccuracies — Fortiva, TBOM Accounts, and OpenSky**

40. Equifax and Experian reported the following consecutive payment history for the Fortiva Mastercard account (TBOM/ATLS/Fortiva MC, account ending in 1033): January 2022 — on time; February 2022 — on time; March 2022 — on time; April 2022 — 60 days past due; May 2022 — on time. A reported status of 60 days past due in April 2022 is facially inconsistent with timely payment in the two immediately preceding months within the same payment grid. Equifax and Experian reported materially different delinquency designations for the same account and the same period, such that both outputs cannot be simultaneously accurate. The Fortiva Mastercard account, along with TBOM/ASPIRE (account ending in 1739) and The Bank of Missouri/Total Visa (account ending in 2151), were each deleted from Plaintiff's TransUnion file on September 8, 2022 under File No. 432861748 as unverifiable. Equifax and Experian continued reporting these same accounts after TransUnion's deletion, on substantially the same furnisher

evidence.

41. One or more Defendants reported the following consecutive payment history for the OpenSky Capital Bank account ending in 0687: December 2020 — on time; January 2021 — 60 days past due; February 2021 — on time. A 60-day past-due status bracketed on either side by on-time months is internally inconsistent within the same payment grid. Additionally, the OpenSky account is reported as having closed in April 2022, yet one or more Defendants reported a last payment date of December 2022 — eight months after the reported closure date.

**L. Notice, Post-Filing Conduct, and Willfulness**

42. From June 2022 through the date of this filing, Plaintiff provided each Defendant with repeated written notice of the specific inaccuracies identified herein through: (a) written disputes submitted by certified mail and through each Defendant's online dispute portal; (b) multiple complaints filed with the Consumer Financial Protection Bureau identifying each Defendant by name and specifying the inaccurate tradelines; (c) multiple complaints filed with the Texas Attorney General's Consumer Protection Division; and (d) formal arbitration demands totaling $14,000 delivered by certified mail to each Defendant, none of which received a substantive response. Each Defendant had actual knowledge of the specific inaccuracies Plaintiff identified at all relevant times.

43. On January 17, 2025, the CFPB issued Consent Order 2025-CFPB-0002 against Equifax and ordered Equifax to pay a $15 million civil penalty for improper investigations of consumer disputes. In its findings, the CFPB specifically found that Equifax: (a) failed to consider relevant information submitted by consumers with their disputes; (b) excessively deferred to furnishers without meaningfully evaluating whether

the furnisher's response made sense; (c) allowed previously deleted inaccuracies to be reinserted into credit reports; (d) sent consumers confusing and contradictory dispute result letters; and (e) placed unreasonable limitations on consumers' ability to accurately describe disputes by using generic dispute codes that prevented meaningful dispute characterization. Each of those specific CFPB findings maps directly to the conduct Plaintiff alleges herein. Equifax's subsequent conduct with respect to Plaintiff's disputes — including ignoring documents Plaintiff submitted, deferring to furnisher automated responses, and representing in its CFPB response that fields were modified when they were not — is the same pattern of conduct the CFPB sanctioned. This provides substantial factual support for Plaintiff's willfulness allegations against Equifax under 15 U.S.C. § 1681n.

44. TransUnion's September 8, 2022 deletion of nine accounts under File No. 432861748 constituted contemporaneous evidence available to Equifax and Experian that the same tradelines were, on the same furnisher evidence, not verifiable by at least one nationwide consumer reporting agency. Equifax's and Experian's continued reporting of those accounts thereafter is further factual support for willfulness. See Safeco Ins. Co. of America v. Burr, 551 U.S. 47 (2007).

45. Equifax's March 18, 2026 reinvestigation of the OneMain tradeline was conducted while this action had been pending for approximately three months and Equifax had appeared through counsel. That reinvestigation's failure to correct any identified inaccuracy under those circumstances provides further factual support for willfulness as to Equifax.

46. Experian committed in writing to completing its reinvestigation of Plaintiff's disputed accounts by March 18, 2023. More than thirty months after that self-imposed deadline, disputed accounts remained on Plaintiff's Experian file with the same

inaccuracies Experian committed to resolving. Experian's failure to meet its own stated deadline provides further factual support for willfulness as to Experian.

47. Defendants' FCRA violations are continuing in nature. Each month that a Defendant prepares and disseminates a consumer report containing inaccurate information constitutes a separate violation of 15 U.S.C. § 1681e(b), and each failure to correct a disputed inaccuracy following reinvestigation constitutes a separate violation of 15 U.S.C. § 1681i. Plaintiff's claims continue to accrue through the date of judgment. See Drew v. Equifax Info. Servs., LLC, 690 F.3d 1100 (9th Cir. 2012).

48. Following the filing of this action in December 2025, Plaintiff's credit scores increased materially, as reflected in MyFICO score alerts retained by Plaintiff, as Defendants began silently deleting or modifying tradelines that had been inaccurately reported for years. This post-litigation score increase — which Plaintiff did not cause through any new payment activity — is consistent with awareness that the prior reporting was inaccurate and supports willfulness.

49. Following the filing of this action, Experian corrected the Apple Card/GS Bank USA, Capital One, and Affirm tradelines to reflect "Discharged through Bankruptcy Chapter 7/Never late" status, removing derogatory payment marks that had previously appeared on those tradelines. These corrections, made during the pendency of this action, are consistent with awareness that the prior reporting was inaccurate.

50. In addition to inaccurate derogatory reporting, Equifax's consumer file omitted an active, positive tradeline — a JPMorgan Chase account ending in 2711 that was open and in good standing — from Plaintiff's Equifax credit file, as reflected in Equifax's consumer disclosure dated on or about April 19, 2026. The omission of a positive active tradeline from a consumer's credit file constitutes a failure to follow reasonable

procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b).

## V. PLAINTIFF'S DAMAGES

### A. Denial of Housing

51. On or about August 3, 2023, Plaintiff applied to Divvy Homes (now operating as Maymont Homes) for rent-to-own housing. Divvy Homes denied Plaintiff's application based in whole or in part on information contained in one or more of Defendants' consumer reports, which at the time contained the inaccuracies described herein. As a direct and proximate result of the denial and Defendants' continued inaccurate reporting, Plaintiff was unable to secure stable conventional housing during the period that followed. Between August 2024 and November 2024, while actively seeking housing, Plaintiff was forced to incur short-term rental costs of approximately $7,083 in excess of what comparable conventional leased housing would have cost. Defendants' continued inaccurate reporting throughout this period was a proximate cause of Plaintiff's inability to secure conventional housing and the excess costs that resulted.

### B. Higher Cost of Credit

52. Plaintiff obtained credit on materially worse terms than he would have obtained but for the inaccuracies identified herein. Plaintiff obtained an automobile loan in October 2024 at 13.00% APR — approximately five percentage points above the Federal Reserve's published average rate for comparable credit-tier borrowers at that time — resulting in quantifiable excess interest over the life of the loan. Plaintiff also obtained a personal loan from OneMain Financial at 16.99% APR, compared to the Federal Reserve's published average of approximately 11.48% for comparable loans at the

relevant time.

**C. Mortgage Application Denial — Better Mortgage / CREDCO**

53. On or about March 8, 2023, a tri-merge hard credit inquiry was submitted to CREDCO on behalf of Better Mortgage Corp in connection with a mortgage application by Plaintiff. The CREDCO inquiry is documented in Experian's production records. At the time of the application, Equifax and Experian were reporting the accounts that TransUnion had deleted as unverifiable in September 2022, directly suppressing Plaintiff's credit scores below mortgage qualification thresholds. Plaintiff will obtain further documentation of this denial through subpoena or other discovery.

**D. Specific Adverse Action Notices**

54. On October 11, 2024, Plaintiff suffered three separate adverse credit events in a single day from two different Defendants. First, Bank of America denied Plaintiff's application for a credit card, identifying Experian as the bureau consulted and citing derogatory records, delinquency, and missed payments as reasons for denial. Second, Credit Union of Colorado, through Simple Car Store, issued an adverse action notice identifying TransUnion as the bureau consulted. TransUnion's FICO Auto Version 9 score of 648 (September 26, 2024) cited serious delinquency as a primary adverse factor. The full loan amount requested was denied; Plaintiff accepted a reduced loan at 13.00% APR on $11,807.05 with a $2,000 down payment. Third, Kemper/American Access Casualty issued an adverse underwriting decision on the same date based in part on consumer report data. Three adverse actions in one day, from two separate Defendants' consumer reports, each citing derogatory reporting as a contributing cause.

55. On October 1, 2024, Sensible Auto Lending, LLC denied Plaintiff's credit

application. Sensible's adverse action notice identified TransUnion as the bureau consulted. TransUnion's score result was "NOT SCORED" as of September 27, 2024 — meaning TransUnion's file was so impaired by inaccurate derogatory reporting that the scoring model could not generate a numeric score. A "NOT SCORED" result is itself evidence of actual damages: TransUnion's file produced a result unscorable to a third-party lender.

56. In 2023, Plaintiff was denied credit by Discover Bank. Discover Bank pulled Plaintiff's Experian consumer report in connection with that application. At the time of the denial, Experian's report contained the inaccurate derogatory accounts described herein.

57. On October 27, 2024, Plaintiff was denied credit by Discover Bank on a second application. Discover Bank identified Experian as the bureau consulted and cited number of past delinquencies as a reason for denial. This denial does not list bankruptcy as a reason for the adverse decision, establishing a direct causation chain between Experian's continued inaccurate reporting of disputed accounts and the denial, independent of the bankruptcy filing. Discover Bank confirmed these two denials by telephone; the call was recorded by Discover Bank.

58. On or about August 19, 2025, Plaintiff received an adverse action notice reflecting an Experian FICO score of 527. The adverse factors cited included serious delinquency and time since delinquency too recent or unknown. August 19, 2025 is approximately ten months after Plaintiff's Chapter 7 discharge. Experian's file, which continued to reflect inaccurate derogatory reporting on discharged and disputed accounts, produced a FICO score of 527 on that date. The lender will be identified through discovery, including Experian's inquiry log.

**E. Insurance Adverse Underwriting Decisions**

59. Plaintiff received adverse underwriting decisions from Kemper/American Access Casualty Insurance on or about April 10, 2025, October 22, 2025, and April 11, 2026. Kemper's own privacy notice confirms that it collects credit history and credit-based insurance scores from consumer reporting agencies in connection with underwriting decisions. Kemper's own declaration pages for the October 22, 2025 and April 11, 2026 renewals explicitly state that "information obtained from a consumer report resulted in an adverse underwriting decision." Each adverse underwriting decision constitutes a third-party adverse action based in whole or in part on information in one or more of Defendants' consumer reports. The April 11, 2026 adverse decision occurred after this action was filed, documenting ongoing harm during the pendency of litigation.

**F. Time, Expense, and Emotional Distress**

60. Over more than thirty months, Plaintiff expended substantial time and money attempting to correct the inaccuracies in Defendants' reporting, including certified mail costs, regulatory complaint preparation, arbitration demand preparation, and prosecution of this action pro se. In addition, Plaintiff's father, Anthony M. Stram Sr., paid approximately $1,500 to $1,800 in Chapter 7 bankruptcy attorney fees on Plaintiff's behalf in connection with Case No. 4:24-bk-04546-BMW. Those fees constitute documented out-of-pocket actual damages proximately caused by the financial circumstances resulting from Defendants' inaccurate reporting. Plaintiff has also suffered emotional distress, including anxiety, frustration, and loss of sleep arising from repeated denial of housing and credit opportunities caused by Defendants' inaccurate reporting. Anthony M. Stram Sr., co-borrower on the Ally Financial account and Plaintiff's father, is expected to provide lay witness testimony regarding both the inaccurate reporting of the Ally Financial account and the observable effects of Defendants' conduct on Plaintiff.

Plaintiff will supplement these allegations through declaration and testimony.

## VI. CAUSES OF ACTION

### COUNT I — Violation of 15 U.S.C. § 1681e(b)

(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy — Against All Defendants)

61. Plaintiff incorporates by reference paragraphs 1 through 60 as if fully set forth herein.

62. Under 15 U.S.C. § 1681e(b), "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Each Defendant prepared and disseminated consumer reports concerning Plaintiff to third parties, including creditors, prospective landlords, and insurers, during the relevant period.

63. Experian failed to follow reasonable procedures to assure maximum possible accuracy as to Plaintiff in the following respects: (a) Experian's reinvestigation of the Ally Financial account on January 27, 2026 added eight months of derogatory payment history not previously present and removed a favorable "Never late" notation, making the tradeline more adverse after the dispute than before; (b) Experian continued reporting the accounts TransUnion deleted as unverifiable in September 2022 for more than thirty months thereafter; and (c) Experian reported the Credit Union of Colorado account with derogatory payment marks for months that Equifax reported as on time on the same account.

64. Equifax failed to follow reasonable procedures to assure maximum possible accuracy as to Plaintiff in the following respects: (a) Equifax reported the OneMain Financial account ending in 3953 as open with an active balance of $20,587 on its February 19, 2026 consumer disclosure, on a debt discharged October 9, 2024; (b) Equifax's consumer disclosures reported September 2023 as both 30 days past due and 60 days past due on the same account, which cannot both be accurate; (c) Equifax reported a scheduled payment of $501 on the OneMain account despite a documented loan modification reducing the payment to $250.76; (d) Equifax reported a Date of First Delinquency of March 1, 2024 that is internally inconsistent with Equifax's own payment history grid showing delinquency in September 2023; (e) Equifax continued reporting the accounts TransUnion deleted as unverifiable in September 2022 for more than thirty months; (f) Equifax reported escalating post-discharge derogatory history on the First Premier Bank account without any bankruptcy notation; and (g) Equifax omitted the JPMorgan Chase account ending in 2711, an active positive tradeline, from Plaintiff's Equifax credit file.

65. TransUnion failed to follow reasonable procedures to assure maximum possible accuracy as to Plaintiff in the following respects: (a) TransUnion's September 8, 2022 reinvestigation under File No. 432861748 resulted in the deletion of nine accounts as unverifiable — meaning TransUnion's own procedures, applied to the same disputed accounts, produced a determination that those accounts could not be verified. The records underlying that determination — including TransUnion's dispute file, furnisher responses, ACDV records, and internal notes for the September 8, 2022 reinvestigation — are part of the operative § 1681e(b) claim against TransUnion and are directly relevant to TransUnion's reinvestigation procedures, file handling, and records retention practices. TransUnion must produce, identify, or account for those materials in this action; (b) TransUnion failed to apply bankruptcy discharge notations to accounts included in Plaintiff's October 9, 2024 discharge, as reflected in TransUnion's October 12, 2025

consumer disclosure; (c) TransUnion silently deleted accounts included in the discharge without any discharge notation, creating a materially misleading picture of Plaintiff's credit history; and (d) TransUnion's file was so impaired by inaccurate derogatory reporting that it produced a "NOT SCORED" result to a third-party lender on September 27, 2024.

66. Defendants' violations of 15 U.S.C. § 1681e(b) were willful within the meaning of 15 U.S.C. § 1681n and Safeco Ins. Co. of America v. Burr, 551 U.S. 47 (2007), as described in Section IV.L. In the alternative, the violations were negligent within the meaning of 15 U.S.C. § 1681o. As a direct and proximate result, Plaintiff suffered actual damages as described in Section V and is entitled to actual damages and, for willful violations, statutory and punitive damages as allowed by law, together with costs.

### COUNT II — Violation of 15 U.S.C. § 1681i

(Failure to Conduct Reasonable Reinvestigation — Against All Defendants)

67. Plaintiff incorporates by reference paragraphs 1 through 60 as if fully set forth herein.

68. Under 15 U.S.C. § 1681i(a)(1), upon receiving notice of a dispute a consumer reporting agency "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." Under 15 U.S.C. § 1681i(a)(4), the agency shall promptly provide the furnisher with all relevant information regarding the dispute, including documents provided by the consumer.

69. Experian failed to conduct a reasonable reinvestigation of Plaintiff's disputes in the following respects: (a) Experian's January 27, 2026 reinvestigation of the Ally Financial account produced a tradeline more derogatory than before the dispute; (b) documents produced by Experian in this action reflect repeated "Auto Response" entries on ACDVs related to Plaintiff's disputes, reflecting a pattern of automated rather than substantive reinvestigation; and (c) Experian failed to transmit to furnishers the documents Plaintiff submitted with his disputes as required by 15 U.S.C. § 1681i(a)(4).

70. Equifax failed to conduct a reasonable reinvestigation of Plaintiff's disputes in the following respects: (a) Equifax's March 18, 2026 reinvestigation of the OneMain Financial dispute failed to correct any of the four specific inaccuracies Plaintiff identified; (b) Equifax's March 26, 2026 response to CFPB Complaint No. 260305-29587787 represented that multiple account fields had been "modified," but those fields continued to display the same inaccurate values; and (c) Equifax failed to transmit to furnishers the documents Plaintiff submitted with his disputes as required by 15 U.S.C. § 1681i(a)(4).

71. TransUnion failed to conduct a reasonable reinvestigation of Plaintiff's disputes in the following respects: (a) TransUnion's September 8, 2022 reinvestigation under File No. 432861748 — which resulted in the deletion of nine of Plaintiff's disputed accounts as unverifiable — is itself part of the operative § 1681i claim against TransUnion. The dispute file, furnisher responses, ACDV records, internal communications, and reinvestigation notes underlying File No. 432861748 are directly relevant to whether TransUnion's reinvestigation procedures were reasonable, whether those procedures were applied consistently to Plaintiff's disputes, and what furnisher evidence TransUnion reviewed that Equifax and Experian did not. TransUnion is required in this action to produce, identify, or account for those 2022 materials — including whether they were retained, destroyed, or are otherwise unavailable — as part of its obligations in this litigation; (b) following Plaintiff's post-discharge disputes, TransUnion

failed to update accounts included in Plaintiff's October 9, 2024 Chapter 7 discharge to accurately reflect the discharge status, including failing to apply Metro 2 Special Comment Code "DA" or any equivalent notation to affected accounts, as reflected in TransUnion's own October 12, 2025 consumer disclosure; and (c) upon information and belief, TransUnion failed to transmit to furnishers the documents Plaintiff submitted with his disputes as required by 15 U.S.C. § 1681i(a)(4).

72. Defendants' violations of 15 U.S.C. § 1681i were willful within the meaning of 15 U.S.C. § 1681n and Safeco, as described in Section IV.L. In the alternative, the violations were negligent within the meaning of 15 U.S.C. § 1681o. As a direct and proximate result, Plaintiff suffered actual damages as described in Section V and is entitled to actual damages and, for willful violations, statutory and punitive damages as allowed by law, together with costs.

# VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Thomas Stram respectfully requests that this Court enter judgment in his favor and against all Defendants, and grant the following relief:

A. A declaration that Defendants violated the Fair Credit Reporting Act as alleged herein;

B. An award of actual damages under 15 U.S.C. § 1681n(a)(1)(A) and/or § 1681o(a)(1);

C. For willful violations, statutory damages under 15 U.S.C. § 1681n(a)(1)(A) and punitive damages under 15 U.S.C. § 1681n(a)(2);

D. Injunctive relief directing Defendants to delete all inaccurate, incomplete, and unverifiable information from Plaintiff's consumer credit files and to accurately reflect the status of all accounts discharged in the October 9, 2024 Chapter 7 bankruptcy;

E. An award of costs of suit under 15 U.S.C. § 1681n(a)(3) and/or § 1681o(a)(2); and

F. Such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: April 22, 2026

Respectfully submitted,

/s/ Michael Thomas Stram

Michael Thomas Stram

Plaintiff, Pro Se

1155 W. Grove Pkwy., Apt. 345

Tempe, Arizona 85283

Telephone: (773) 240-8767

Email: michael_stram@icloud.com

**VERIFICATION**

I declare under penalty of perjury that I have read the foregoing Second Amended Complaint and that the factual allegations contained therein are true and correct based on my personal knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Executed on April 22, 2026, at Tempe, Arizona.

/s/ Michael Thomas Stram

Michael Thomas Stram

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2026, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Arizona using the CM/ECF system, which will send notification of such filing to all counsel of record.

Counsel for Equifax: Ritika Singh, risingh@seyfarth.com, Seyfarth Shaw LLP

Counsel for Experian: Kate M. Geyer, kate.geyer@troutman.com;

Sonya Thompson, sonya.thompson@troutman.com, Troutman Pepper Locke

Counsel for TransUnion: Marc F. Kirkland, mkirkland@qslwm.com,

Quilling Selander Lownds Winslett & Moser

/s/ Michael Thomas Stram

Michael Thomas Stram, Plaintiff Pro Se